UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ERROL UNDERWOOD,

    Plaintiff,

v.

DR. KHIN WIN, et al.,

    Defendants.

No. 2: 16-cv-0346 JAM KJN P

FINDINGS AND RECOMMENDATIONS

I. Introduction

Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action pursuant to 42 U.S.C. § 1983. This action proceeds on the amended complaint filed May 17, 2016, against defendants Win and Chen. (ECF No. 11.) Plaintiff alleges that defendants provided inadequate medical care in violation of the Eighth Amendment.

Pending before the court is defendants' summary judgment motion. (ECF No. 33.) Also pending is plaintiff's motion for appointment of an expert witness. (ECF No. 40.) For the reasons discussed herein, the undersigned recommends that defendants' summary judgment motion be granted. Plaintiff's motion for appointment of an expert witness is denied.

II. Legal Standard for Summary Judgment

Summary judgment is appropriate when it is demonstrated that the standard set forth in Federal Rule of Civil procedure 56 is met. "The court shall grant summary judgment if the

1

movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P. 56(c)).

"Where the nonmoving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 advisory committee's notes to 2010 amendments (recognizing that "a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact"). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

Consequently, if the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of such a factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987), overruled in part on other grounds, Hollinger v. Titan Capital Corp., 914 F.2d 1564, 1575 (9th Cir. 1990).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 630. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586 (citation omitted).

By contemporaneous notice provided on June 23, 2016 (ECF No. 15), plaintiff was advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (*en banc*);

Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

III. Legal Standard for Eighth Amendment Claim

A prisoner's claim of inadequate medical care does not constitute cruel and unusual punishment in violation of the Eighth Amendment unless the mistreatment rises to the level of "deliberate indifference to serious medical needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)).

The two part test for deliberate indifference requires the plaintiff to show (1) "a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096. "Deliberate indifference is a high legal standard," Simmons v. Navajo County Ariz., 609 F.3d 1011, 1019 (9th Cir. 2010); Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004), and is shown where there was "a purposeful act or failure to respond to a prisoner's pain or possible medical need" and the indifference caused harm. Jett, 439 F.3d at 1096. The prison official must not only "be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists," but that person "must also draw the inference." Toguchi, 392 F.3d at 1057, quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994). "If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk." Id., quoting Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002).

Negligence, inadvertence, or differences of medical opinion between the prisoner and health care providers, however, do not violate the Eighth Amendment. See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).

IV. Discussion of Claim Against Defendant Win

A. Clarification of Claims

In the amended complaint (ECF No. 11), plaintiff alleges that defendant Win failed to provide adequate pain medication and also failed to timely diagnose an infection. Defendants' summary judgment motion addresses these claims.

////

In the opposition to defendants' summary judgment motion, plaintiff also appears to argue that defendant Win caused the infection by failing to change and clean his catheter. Plaintiff did not clearly raise this claim in the amended complaint.

Plaintiff may not amend his complaint to add new claims by raising them in an opposition to defendants' summary judgment motion. Accordingly, the undersigned will not further discuss plaintiff's claim that defendant allegedly caused his infection by failing to change and clean his catheter.

B. Undisputed Facts

Defendant Win is a physician, board certified in internal medicine, and has been licensed to practice medicine in California since 2002. (ECF No. 33-2 at 2; ECF No. 41-1 at 1.) Defendant Win is currently employed as a physician and surgeon at California State Prison-Solano ("CSP-Solano"). (ECF No. 33-2 at 2; ECF No. 41-1 at 1.) His responsibilities include providing medical care to inmates. (ECF No. 33-2 at 2; ECF No. 41-1 at 1.)

On April 25, 2015, plaintiff reported to the CSP-Solano Triage and Treatment Area ("TTA") for complaints of urine retention and severe abdominal pain. (ECF No. 33-2 at 2; ECF No. 41-1 at 2.) During the evaluation, Dr. Largoza was contacted and he instructed that plaintiff be given a Foley catheter. (ECF No. 33-2 at 2; ECF No. 41-1 at 2.) The Foley catheter was inserted without complication, and 660 cc of clear yellow urine was drained. (ECF No. 33-2 at 2; ECF No. 41-1 at 2.) Plaintiff reported immediate relief from abdominal discomfort. (ECF No. 33-2 at 2; ECF No. 41-1 at 2.) Plaintiff was instructed to take Terazosin (medication to reduce prostate swelling) and follow up with his Primary Care Physican ("PCP") in 3 days. (ECF No. 33-2 at 2; ECF No. 41-1 at 2.) A urinalysis ("UA") on that date indicated that plaintiff did not have any urinary tract infection at that time. (ECF No. 33-2 at 2; ECF No. 41-1 at 2.)

On April 28, 2015, defendant Win clinically examined plaintiff for follow up to his April 25, 2015 TTA visit. (ECF No. 33-2 at 2; ECF No. 41-1 at 2-3.) Defendant Win noted that plaintiff had a history of Benign Protate Hyperplasia ("BPH"). (ECF No. 33-2 at 2; ECF No. 41-1 at 2-3.) On limited exam due to the Foley catheter, plaintiff's prostate showed to be enlarged and tender. (ECF No. 33-2 at 2; ECF No. 41-1 at 2-3.) Defendant Win ordered a urine cytology,

a UA, and a PSA (Prostate Specific Antigen) test. (ECF No. 33-2 at 2; ECF No. 41-1 at 2-3.) Defendant Win continued plaintiff on Motrin as needed for pain. (ECF No. 33-2 at 2; ECF No. 41-1 at 2-3.) Defendant Win referred plaintiff for a urology consultation as soon as possible. (ECF No. 33-2 at 2; ECF No. 41-1 at 2-3.)

On April 29, 2015, plaintiff returned to TTA for a complaint of bladder pain. (ECF No. 33-2 at 2; ECF No. 41-1 at 3.) Plaintiff was medically evaluated and, per Dr. Kohler's order, he was given a dose of Tylenol with codeine, i.e., Tylenol # 4. (ECF No. 33-2 at 2; ECF No. 41-1 at 3.) Plaintiff was monitored, his pain was alleviated, and he was discharged back into custody. (ECF No. 33-2 at 2; ECF No. 41-1 at 3.)

On May 1, 2015, defendant Win prescribed plaintiff a seven day supply (from May 1, 2015, to May 8, 2015) of Tylenol #4 for his pain complaint.[1] (ECF No. 33-2 at 2; ECF No. 41-1 at 3.)

On May 14, 2015, defendant Win saw plaintiff for a follow up to his April 28, 2015 visit. (ECF No. 33-2 at 3; ECF No. 41-1 at 4-5.) Defendant Win determined that plaintiff's Foley catheter could be removed. (ECF No. 33-2 at 3; ECF No. 41-1 at 5.) Defendant Win instructed plaintiff to take Motrin as needed for pain. (ECF No. 33-2 at 3; ECF No. 41-1 at 4-5.) Defendant Win ordered a UA. (ECF No. 33-2 at 3; ECF No. 41-1 at 4-5.)

On May 15, 2015, plaintiff's catheter was removed and reinserted.[2] (ECF No. 33-3 at 3;

---

[1] In their statements of undisputed facts, the parties state that plaintiff's medical records show that on May 4, 2015, he reported to TTA and stated that he did not receive his evening dose of Tylenol #4. (ECF No. 33-2 at 3; ECF No. 41-1 at 3.) Apparently, plaintiff was not given his medication at that time. Plaintiff's medical records show that he went back to the TTA the next morning, May 5, 2015, to report that he did not receive his Tylenol #4 the prior evening. (ECF No. 33-2 at 3; ECF No. 41-1 at 4.) Per instructions by the onsite physician, Dr. Daszko, plaintiff was given a dosage of Tylenol #4 at that time. (ECF No. 33-2 at 3; ECF No. 41-1 at 4.) There is no evidence demonstrating that either defendant was responsible for plaintiff's failure to receive his medication on May 4, 2015. Although addressed in the pleadings, the facts regarding plaintiff's failure to receive medication on May 4, 2015 are not particularly relevant to the claims against defendants.

[2] Defendants do not address why plaintiff's catheter was reinserted on May 15, 2015, apparently contrary to defendant Win's May 14, 2015 order that the catheter be removed. In his opposition, plaintiff states that the catheter was reinserted because he could not urinate without it. (ECF No. 41-1 at 5.)

6

ECF No. 41-1 at 5.)  A UA sample was collected from plaintiff.  (ECF No. 33-2 at 3; ECF No. 41-1 at 5.)  The UA result revealed trace Leukocyte Esterase, and was negative for white blood cells ("WBC"), red blood cells ("RBC") and Nitrites.  (ECF No. 33-2 at 3; ECF No. 41-1 at 5.)  The results of the UA taken May 15, 2015, indicated that there was no clinical or lab infection.  (ECF No. 33-3 at 4 (Win declaration); Id. at 31 (lab report from May 15, 2015).)

On May 26, 2015, Nurse Morales collected a UA from plaintiff.  (ECF No. 33-3 at 2; ECF No. 41-1 at 6.)

The UA sample taken by Nurse Morales on May 26, 2015, was received by Quest Diagnostics on May 27, 2015.  (ECF No. 33-3 at 2; ECF No. 41-1 at 6.)  The UA test result was generated in a report dated May 28, 2015, indicating the presence of infection.  (ECF No. 33-2 at 3; ECF No. 41-1 at 6.)

On June 2, 2015, defendant Win received the Quest Diagnostic UA report and ordered a two week course of antibiotic treatment (Bactrim) for plaintiff.  (ECF No. 33-2 at 3; ECF No. 41-1 at 7.)

On June 4, 2015, defendant Win saw plaintiff for a follow-up.  (ECF No. 33-2 at 4; ECF No. 41-1 at 8.)

On June 25, 2015, plaintiff underwent a urology consult at San Joaquin General Hospital with Dr. Alexander Liu.  (ECF No. 33-2 at 4; ECF No. 41-1 at 9.)  Dr. Liu noted that plaintiff went into urinary retention on April 25, 2015.  (ECF No. 33-2 at 4; ECF No. 41-1 at 9.)  A Foley catheter was successfully inserted and drained a large amount of urine.  (ECF No. 33-2 at 4; ECF No. 41-1 at 9.)  Dr. Liu's report states:  "Since then, the patient has been doing fine.  His prostatis seems to have resolved and he is feeling much better than before.  He also has past medical history of psych problems on certain medications."  (ECF No. 33-2 at 4; ECF No. 41-1 at 9.)  Dr. Liu noted some mild prostate tenderness, which he attributed to likely residual inflammation from his recent infection.  (ECF No. 33-2 at 4; ECF No. 41-1 at 9.)  Dr. Liu's impression was that plaintiff's acute prostatitis "seems to be resolving."  (ECF No. 33-2 at 4; ECF No. 41-1 at 9.)  Dr. Liu removed plaintiff's Foley catheter for a voiding trial, and recommended that he continue on Tarozosin.  (ECF No. 33-2 at 4; ECF No. 41-1 at 9.)  Dr. Liu instructed that if plaintiff was

unable to void, the Foley catheter should be replaced and follow-up with him should be made. (ECF No. 33-2 at 4; ECF No. 41-1 at 9.)

C. Analysis

1. Did Defendant Win Fail to Provide Adequate Pain Medication?

*Disputed Facts*

The parties dispute whether plaintiff complained of pain on April 28, 2015. In his verified declaration submitted in support of his opposition, plaintiff alleges that on April 28, 2015, he told defendant Win that the pain medication he was taking for prostate pain, i.e., Motrin, was not adequate. (ECF No. 41 at 1.) In his declaration, defendant Win states that on April 28, 2015, plaintiff "generally was not in distress." (ECF No. 33-3 at 2.) Defendant Win continued Motrin for pain. (Id.)

The parties also dispute what occurred during defendant Win's May 14, 2015 examination of plaintiff. In his declaration, defendant Win states that on May 14, 2014, he told plaintiff that his PSA and urine cytology from his April 28, 2015 visit was normal. (ECF No. 33-3 at 3.) Dr. Win states that plaintiff told him that he felt better and agreed to remove the Foley catheter to avoid a urinary tract infection ("UTI"). (Id.) Defendant Win states that he told plaintiff that his urology consult was scheduled for June 25, 2015. (Id.) Defendant Win states that he told plaintiff to return to TTA if he had another episode of urinary retention. (Id.) Defendant Win states that plaintiff requested more Tylenol # 4. (Id.) Defendant Win states that he told plaintiff that codeine may cause urinary retention, and he instructed plaintiff to take Motrin as needed for any further pain. (Id.) Defendant Win states that plaintiff was asymptomatic and generally not in distress at this time. (Id.)

In his opposition, plaintiff alleges that on May 14, 2014, he told defendant Win that he was in severe pain and that the Motrin was not helping. (ECF No. 41-1 at 5.) Plaintiff also states that he did not agree to removal of the catheter because he could not urinate without it. (Id.) Plaintiff also alleges that defendant Win did not tell him that codeine could cause urinary retention. (Id.) Plaintiff also appears to claim that defendant Win did not inform him of his urology consultation. (Id.) Plaintiff also claims that he told defendant Win that Tylenol # 4 did

8

not adequately treat his pain. (ECF No. 41 at 6.)

*Analysis*

Defendants argue that defendant Win is entitled to summary judgment because there is no evidence that he acted with deliberate indifference with respect to plaintiff's pain medication. Defendants argue that defendant Win prescribed adequate pain medication. Defendants do not dispute that plaintiff had a serious medical need.

The undersigned begins by addressing the arguments raised in plaintiff's opposition. In support of his claim he was in great pain, plaintiff argues that he did not "tolerate well" the April 25, 2015 procedure involving insertion of the Foley catheter. Plaintiff cites Exhibit A, p. 1, attached to his opposition in support of this claim. (ECF No. 41-3 at 2.) This document is a report prepared by defendant Win following his April 28, 2015 examination of plaintiff which states, in relevant part, "today dre shows enlarged and tender prostate but a limited exam because patient is on Foley and can't tolerate well to procedure." (Id.) This report indicates that the procedure plaintiff could not tolerate well was a prostate exam, because of the catheter. (Id.) In other words, this report does not state that plaintiff did not "tolerate well" the insertion of the catheter.

Plaintiff also disputes defendants' claim that codeine can cause urinary retention. Plaintiff alleges that he took Tylenol with Codeine from December 7, 2016, through May 6, 2017, and did not have an episode of urinary retention. (Id. at 3.) This argument contradicts the undisputed evidence that plaintiff suffered from urinary retention on April 25, 2015, when the catheter was inserted. In addition, plaintiff provides no expert evidence supporting his claim that codeine does not cause urinary retention.

In support of his claim that he suffered great pain, plaintiff also alleges that he was wheelchair bound for 2 1/2 weeks, i.e. from April 25, 2015, through May 8, 2015, as a result of his inability to walk due to pain. (ECF No. 41 at 6.) The undersigned has examined the medical records submitted by both parties and can find no evidence demonstrating that plaintiff was wheelchair bound from April 25, 2016 through May 8, 2015. In fact, the medical record from April 29, 2015, states that after plaintiff received the Tylenol #4 ordered by Dr. Kohler, at 2030

hours plaintiff was stable and ambulatory. (ECF No. 33-3 at 23.) The record also states that after receiving the medication, plaintiff reported his pain level at 0/10. (Id.)

It is possible that plaintiff was taken by wheelchair to the medical clinic at some time from April 25, 2015, through May 8, 2015. However, plaintiff's conclusory assertion that he was *wheelchair bound* due to pain from April 25, 2015, and May 8, 2015, is contradicted by the medical records. Accordingly, the undersigned finds that plaintiff has not met his burden of demonstrating that he was wheelchair bound due to pain from April 25, 2015, through May 8, 2015. See Scott v. Harris, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.")

For the reasons stated herein, the undersigned finds that defendant Win did not act with deliberate indifference with respect to plaintiff's pain medication. The parties dispute how plaintiff described his pain to defendant Win on April 28, 2015, and May 14, 2015. However, it is undisputed that defendant Win prescribed pain medication for plaintiff on three occasions. On April 28, 2015, defendant Win continued plaintiff's Motrin prescription after examining plaintiff. On May 1, 2015, defendant Win prescribed Tylenol # 4 for plaintiff for seven days, apparently without examining plaintiff. On May 14, 2015, defendant Win prescribed Motrin for plaintiff. On May 14, 2015, defendant Win did not prescribe Tylenol with Codeine because it could cause urinary retention.

The evidence in this case demonstrates a difference of opinion between plaintiff and defendant Win regarding the appropriate pain medication. A prisoner does not have a constitutional right to the medication of his choice, and a mere difference of opinion regarding appropriate treatment and pain medication is insufficient to give rise to a constitutional claim. See Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004); Gauthier v. Stiles, 402 Fed.Appx. 203 (9th Cir. 2010) (disagreement with dosage and type of pain medication administered insufficient to establish deliberate indifference to serious medical needs); Sloan v. Oakland Police Dep't, 376 Fed.Appx. 738, 740 (9th Cir. 2010) (inmate's contention that he should have received

stronger pain medication was a difference of medical opinion that does not give rise to an Eighth Amendment violation).

The undersigned also observes that plaintiff's allegations regarding pain and the alleged ineffectiveness of the Motrin and Tylenol # 4, are inconsistent with some of his medical records prepared by non-defendants. For example, as discussed above, the entry from April 29, 2015, at 2030 hours, states that plaintiff reported a pain level of 0/10 after receiving Tylenol # 4. (ECF No. 33-3 at 23.) The May 26, 2015 entry by Nurse Morales, who took plaintiff's UA that day, states that plaintiff reported no abdominal pain. (ECF No. 33-3 at 16.) The report by Dr. Liu describing his June 25, 2015 exam of plaintiff (which plaintiff does not dispute) does not state that plaintiff reported that he suffered from untreated pain. (ECF No. 33-3 at 40.) Dr. Liu's report states that plaintiff was "doing fine" after insertion of the Foley catheter. (Id.)

Accordingly, for the reasons discussed above, the undersigned recommends that defendant Win be granted summary judgment as to plaintiff's claim that defendant Win provided inadequate pain medication.

2. Diagnosis of Infection

Plaintiff alleges that he suffered from a urinary tract infection from May 15, 2015, until defendant Win prescribed antibiotics on June 2, 2015. Plaintiff argues that the results from the UA taken May 15, 2015 demonstrated that he had an infection and that defendant Win acted with deliberate indifference by failing to prescribe antibiotics on that date.

Defendants move for summary judgment on the grounds that it is undisputed that the results from the UA taken May 15, 2015, showed no sign of infection, and that defendant Win prescribed antibiotics on June 2, 2015, after receiving the results of the UA taken May 26, 2015, which showed an infection.

In his opposition, plaintiff argues that the trace amounts of Leukocyte Esterase found in the May 15, 2015 UA were signs of an infection. In support of this claim, plaintiff alleges that on May 26, 2015, Nurse Morales told him that the results from the UA taken on May 15, 2015, showed traces of infection. (ECF No. 41-1 at 8.) Plaintiff's claim that Nurse Morales told him that the results of the May 15, 2015 UA showed traces of infection is not admissible evidence

11

demonstrating that plaintiff had an infection on May 15, 2015. In addition, plaintiff has offered no expert evidence supporting this claim.

Plaintiff also appears to argue that Nurse Morales improperly took the urine samples for the May 15, 2015, and May 26, 2015 UA from his catheter bag. (ECF No. 41 at 5.) Plaintiff appears to argue that had the samples been properly taken, the infection would have been sooner diagnosed. Attached to plaintiff's opposition is a medical record from May 26, 2015, by Nurse Morales stating that she received the urine sample from plaintiff's catheter bag. (ECF No. 41-3 at 4.)

The medical records from May 15, 2015 (attached to defendant Win's declaration) indicate that the urine sample was taken by Nurse Ogunleye, i.e., not Nurse Morales as plaintiff alleges. (ECF No. 33-3 at 9.) In relevant part, the notes state, "With sterile technique, 18" French foley inserted with good urine return." (Id.) The notes go on to state, "leg bag attached," indicating that the catheter bag was reattached after the urine sample was obtained. (Id.) Thus, the notes from May 15, 2015, indicate that the urine sample was not taken from the catheter bag, but from the inserted catheter.

Plaintiff's claim that the May 15, 2015 UA was improperly taken is not supported by the record or expert testimony. Even if the May 15, 2015 UA sample was improperly taken, there is no evidence that defendant Win had knowledge of the alleged improper procedure. Finally, even if the May 26, 2015 sample was improperly taken from plaintiff's catheter bag by Nurse Morales, plaintiff was diagnosed with an infection and treated with antibiotics based on this sample.

Plaintiff also claims that on May 26, 2015, Nurse Morales tested plaintiff's urine with a stick and showed him that his urine was infected. (ECF No. 41 at 3.) In support of this claim, plaintiff cites Exhibit A, p. 3, which is the report prepared by Nurse Morales following her May 26, 2015 examination of plaintiff. (ECF No. 41-3 at 4.) In relevant part, this report states,

> [S]ample retrieved from catheter bag (recently emptied bag), with results as followed: Large amounts (++) Leukocytes, (+) for Nitrite, (trace) of Protein, (+++) for blood. Urine dark amber color/cloudy, no foul smelling odor. Consulted with Dr. Win who requested urine be sent to lab for further analysis, to provide antibiotics if need.

(ECF No. 41-3 at 4.)

Plaintiff argues that the medical record above shows that he had an infection on May 26, 2015, and that defendant Win knowingly failed to provide antibiotics on that date.

Defendants do not address this entry in plaintiff's medical records by Nurse Morales regarding plaintiff's May 26, 2015 urine sample. However, plaintiff has provided no expert evidence demonstrating that the description of the May 26, 2015 urine sample by Nurse Morales was definitive evidence of an infection. More importantly, the record above demonstrates that defendant Win chose to wait until he received the results of the lab analysis before deciding which, if any, antibiotics to prescribe. The lab results would confirm whether plaintiff had an infection and what type of infection. Defendant Win's decision to wait until he received the lab results before prescribing antibiotics does not demonstrate deliberate indifference to plaintiff's serious medical needs.

Plaintiff also suggests that defendant Win had the lab results from the May 26, 2015 UA before June 2, 2015, but failed to review them. Plaintiff alleges that on June 2, 2015, the odor from his catheter bag was so bad that Officer Sanchez sent him to the noon med call line to speak to someone. (ECF No. 41-2 at 5. Plaintiff alleges that he spoke with Ms. Blake, and told her about his pain and the foul odor. (Id.) Plaintiff alleges that he showed Ms. Blake a 7362 form he had submitted requesting medication for his infection. (Id.) Plaintiff alleges that Ms. Blake then took down the information and he returned to his building. (Id.) Plaintiff alleges that fifteen minutes later, he was called to the medical line to pick up the antibiotics. (Id.) Plaintiff suggests that he received antibiotics on June 2, 2015, because his request to Ms. Blake prompted defendant Win to review the lab results, which had arrived at the prison days before.

Plaintiff's claim that defendant Win failed to timely review the lab results, and only did so when prompted by plaintiff's request to Ms. Blake, is speculative. It is undisputed that on May 28, 2015 Quest Diagnostics generated the lab report from the UA taken May 26, 2015. Plaintiff has presented no evidence demonstrating that defendant Win did not receive the report on June 2, 2015, as alleged in his declaration. (See ECF No. 33-3 at 3.) Plaintiff's claim that defendant Win failed to timely review the lab results or knowingly failed to order the antibiotics despite knowing

13

the lab results is unsupported by the record.[3]

The undisputed evidence demonstrates that defendant Win ordered antibiotics for plaintiff on the same day he received the results of the UA, which showed that plaintiff had an infection. These undisputed facts demonstrate that defendant Win did not act with deliberate indifference to plaintiff's serious medical needs. Accordingly, defendant Win should be granted summary judgment as to this claim.

V. Discussion of Claims Against Defendant Chen

Plaintiff alleges that defendant Chen wrongly denied his grievances alleging that defendant Win did not provide adequate pain medication. (ECF No. 11 at 5 (amended complaint).) In the opposition to the pending motion, plaintiff also alleges that defendant Chen failed to order that plaintiff's catheter be cleaned or changed. (ECF No. 41 at 7.) Plaintiff may not amend his complaint by way of his opposition to defendants' summary judgment motion. Accordingly, the undersigned will not further discuss plaintiff's claim that defendant Chen failed to order that his catheter be changed and cleaned.

A. Undisputed Facts

Defendant Chen is a physician, board certified in internal medicine, and has been licensed to practice medicine in California since 2002. (ECF No. 33-2 at 5; ECF No. 41-1 at 13.) Defendant Chen is currently employed as a Physician and Surgeon at CSP-Solano. (ECF No. 33-2 at 5; ECF No. 41-1 at 13.) Defendant Chen's responsibilities include providing medical care to inmates. (ECF No. 33-2 at 5; ECF No. 41-1 at 13.)

On June 17, 2015, defendant Chen saw plaintiff in response to his 602 appeal, and Dr. Chen conducted the First Level Review. (ECF No. 33-2 at 5; ECF No. 41-1 at 13.) In his 602 Appeal, plaintiff requested to be seen by a urologist at an outside hospital and to be prescribed stronger pain medication for his urinary retention condition. (ECF No. 33-2 at 5; ECF No. 41-1 at 13.)

---

[3] It is undisputed that the lab report was generated May 28, 2015, which was a Saturday. The following Monday, i.e., May 30, 2015, was Memorial Day. June 2, 2015, was the following Thursday. It is possible that defendant Win did not receive the lab report sooner because it was generated on a three-day holiday weekend.

After reviewing plaintiff's medical records, defendant Chen determined that plaintiff was diagnosed on April 25, 2015, with acute urinary retention from an enlarged prostate (BPH-Benign Prostate Hyperplasia). (ECF No. 33-2 at 5; ECF No. 41-1 at 13-14.) On this date, per instructions from Dr. Largoza, plaintiff received a Foley catheter, which he tolerated well.[4] (ECF No. 33-2 at 5; ECF No. 41-1 at 14.) The Foley catheter drained approximately 650 cc of clear yellow urine. (ECF No. 33-2 at 5; ECF No. 41-1 at 4.) Plaintiff reported immediate relief from his abdominal discomfort. (ECF No. 33-2 at 5; ECF No. 41-1 at 4.) Plaintiff was instructed to take Terazosin (medication to reduce prostate swelling) and follow up with his Primary Care Physician in 3 days. (ECF No. 33-2 at 5; ECF No. 41-1 at 4.)

Plaintiff's medical records indicated that on April 28, 2015, defendant Win saw plaintiff for follow-up to his April 25, 2015 medical visit for urinary retention. (ECF No. 33-2 at 5; ECF No. 41-4 at 14.) Defendant Win noted that plaintiff had a history of BPH. (ECF No. 33-2 at 5; ECF No. 41-4 at 14.) On limited exam due to his Foley catheter his prostate showed to be enlarged and tender. (ECF No. 33-2 at 5; ECF No. 41-4 at 14.) Plaintiff was generally not in distress.[5] (ECF No. 33-2 at 5; ECF No. 41-1 at 14.) Defendant Win continued plaintiff on Motrin as needed for pain, and referred plaintiff for a urology consultation as soon as possible. (ECF No. 33-2 at 5; ECF No. 41-1 at 14.)

On June 17, 2015, defendant Chen examined plaintiff for his 602 Appeal First Level Review. (ECF No. 33-2 at 7; ECF No. 41-1 at 14-15.) Defendant Chen observed that plaintiff's vital signs were normal. (ECF No. 33-2 at 6; ECF No. 41-1 at 14-15.) Plaintiff had a Foley catheter for urinary retention, no bladder distention and he was prescribed Hytrin (Terazosin) to

---

[4] Plaintiff argues that the records show that he did not "tolerate well" the insertion of the Foley catheter. (ECF No. 41-1 at 14.) As discussed above, the medical records show that plaintiff did not "tolerate well" the prostate exam defendant Win attempted to perform on April 28, 2015. There are no medical records supporting plaintiff's claim that he did not "tolerate well" insertion of the Foley catheter.

[5] In the section of his opposition addressing defendants' undisputed facts regarding the claims against defendant Win, plaintiff alleges that he was in distress on April 28, 2015. However, in the section of his opposition addressing defendants' undisputed facts regarding his claim against defendant Chen, plaintiff does not dispute defendants' claim that he was not in distress on April 28, 2015.

reduce prostate swelling for his BPH. (ECF No. 33-2 at 6; ECF No. 41-1 at 14-15.) Defendant Chen told plaintiff that he had an appointment for a urology consultation in one week. (ECF No. 33-2 at 6; ECF No. 41-1 at 14-15.) Based on his review of plaintiff's medical records and his clinical examination of plaintiff, defendant Chen partially granted plaintiff's 602 Appeal in that his request for an outside urology appointment was approved and scheduled. (ECF No. 33-2 at 6; ECF No. 41-1 at 14-15.) Plaintiff's request for stronger medication was not granted. (ECF No. 33-2 at 6; ECF No. 41-1 at 14-15.)

Other than the First Level Review of plaintiff's 602 Appeal on June 17, 2015, defendant Chen had no other involvement in plaintiff's medical care relating to his urinary retention condition. (ECF No. 33-2 at 6; ECF No. 41-1 at 15.)

B. Discussion

Defendants argue that defendant Chen should be granted summary judgment because he did not act with deliberate indifference when he denied plaintiff's request for stronger pain medication made in the 602 Appeal.

The parties dispute what plaintiff told defendant Chen during the June 17, 2015 examination. Defendant Chen states that plaintiff had no pain. (ECF No. 33-4 at 2.) In his opposition, plaintiff alleges that on June 17, 2015, he still had the infection for which he was taking antibiotics, and he was in great pain.

The undersigned finds that plaintiff's claim against defendant Chen for failing to prescribe stronger pain medication also involves a difference of opinion which does not rise to deliberate indifference. See Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004). Defendant Chen did not fail to prescribe pain medication to plaintiff. Instead, he continued plaintiff's prescription for Motrin.

The undersigned also observes that it is undisputed that defendant Win prescribed antibiotics for two weeks on June 2, 2015. Therefore, at the time of the June 17, 2015 exam by defendant Chen, plaintiff should have finished the antibiotics ordered on June 2, 2015. Plaintiff does not dispute that the report prepared by Dr. Liu following his June 25, 2015 urology consultation with plaintiff states that plaintiff has been "doing fine" since insertion of the Foley

catheter.  (ECF No. 33-3 at 40 (Liu report).)  Dr. Liu also wrote that plaintiff's prostatitis seems to have resolved.  (Id.)  These records undermine plaintiff's claim that he was in great pain on June 17, 2015.

VI.  Plaintiff's Motion for An Expert Witness

In support of his opposition, plaintiff requests that the court appoint an expert witness. (ECF No. 40.)  Plaintiff request that the expert address the following issues:  1) the time period in which the catheter should be cleaned; 2) whether failing to clean or change a catheter causes infection; 3) whether odor from a catheter is indicative of infection; 4) whether Tylenol #4 cause urinary tract infections; and 5) whether there were other effective pain medications defendants could have prescribed other than Tylenol # 4.

Rule 706 of the Federal Rules of Evidence authorizes the Court to appoint an independent expert.  Such an appointment is within the discretion of the trial judge and may be appropriate when "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or decide a fact in issue.  See Torbert v. Gore, 2016 WL 3460262, at *2 (S.D. Cal. June 23, 2016) (citation omitted); see also Walker v. Am. Home Shield Long Term Disability Plan, 180 F.3d 1065, 1070-71 (9th Cir. 1999) (finding that district court did not abuse its discretion by sua sponte appointing a medical expert to help the court evaluate confusing and contradictory evidence regarding fibromyalgia, which the court described as "an elusive disease of unknown cause"); Ledford v. Sullivan, 105 F.3d 354, 358-60 (7th Cir. 1997) (upholding district court's denial of prisoner's motion to appoint an expert in section 1983 action, where the expert planned to testify regarding whether prison officials showed deliberate indifference to the prisoner's serious medical needs).

An expert appointed pursuant to Rule 706 does not serve as an advocate for either party and each party retains the ability to call its own experts.  Fed. R. Evid. 706(e); Faletogo v. Moya, 2013 WL 524037, at *2 (S.D. Cal. Feb. 12, 2013) (Rule 706 "does not contemplate court appointment and compensation of an expert witness as an advocate for one of the parties."); Walker v. Woodford, 2008 WL 793413, at *1 (S.D. Cal. Mar. 24, 2008) ("[r]easonably construed,

[Rule 706] does not contemplate the appointment of, and compensation for, an expert to aid one of the parties.") (citation omitted). Expert testimony is not essential in every case alleging deliberate indifference to serious medical needs in violation of the Eighth Amendment. See Ledford, 105 F.3d at 358-60 ("[T]he question of whether the prison officials displayed deliberate indifference" toward a prisoner's serious medical needs does not always "demand that the jury consider probing, complex questions concerning medical diagnosis and judgment.").

Plaintiff's request for appointment of an expert to address how often catheters should be cleaned and whether failing to clean or change catheters causes infection is denied because the amended complaint does not raise these claims.

Plaintiff does not claim that any odor came from his catheter during his examinations by defendants. Accordingly, plaintiff's request for an expert to opine whether odors coming from catheters are indicative of infection is denied.

It appears that plaintiff is requesting appointment of an expert to challenge defendants' evidence that Tylenol # 4 can cause urinary retention. Plaintiff also requests appointment of an expert to opine as to whether defendants could have prescribed a pain medication other than Tylenol # 4.

Plaintiff's claim alleging inadequate pain medication are not so complex so as to require appointment of an expert witness. Arrellano v. Hodge, 2017 WL 2692875 at *1 (S.D. Cal. 2017) (courts should appoint an expert for an indigent inmate and apportion all costs to an opponent only when the expert would significantly help the court understand complex or compelling issues.) As discussed above, whether plaintiff required stronger pain medication involves a difference of opinion between plaintiff and defendants and does not rise to the level of deliberate indifference.

The undersigned finds that appointment of an expert to confirm defendants' claim that Tylenol # 4 can cause urinary retention is not authorized by Rule 706. As discussed above, experts appointed pursuant to Rule 706 do not act as experts for either party.

For the reasons discussed above, plaintiff's motion for appointment of an expert witness is denied.

Accordingly, IT IS HEREBY ORDERED that plaintiff's motion for appointment of an expert witness (ECF No. 40) is denied; and

IT IS HEREBY RECOMMENDED that defendants' summary judgment motion (ECF No. 33) be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: December 26, 2017

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

Un346.sj